NOTICE

Decision filed 06/07/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240134-U

NO. 5-24-0134

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* K.M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21-JA-14 |
| | ) | |
| Javon J., | ) | Honorable |
| | ) | Matthew D. Lee, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Moore and McHaney concurred in the judgment.

**ORDER**

¶ 1     *Held*: Evidence amply supported the circuit court's findings that respondent was unfit and that the minor's best interests required terminating his parental rights. As any contrary argument would be frivolous, we allow appointed counsel to withdraw and affirm the circuit court's judgment.

¶ 2     Respondent, Javon J., appeals the circuit court's orders finding him unfit to parent his son, K.M., and terminating his parental rights. His appointed appellate counsel has concluded that there is no reasonably meritorious argument that the court erred in either respect. Accordingly, he has filed a motion for leave to withdraw as counsel on appeal together with a supporting memorandum explaining why he believes the issues to be frivolous. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified respondent of the motion. This court has provided him ample

1

opportunity to respond, but he has not done so. After considering the record on appeal and counsel's motion and memorandum, we agree that this appeal presents no issue of even arguable merit. Thus, we grant counsel leave to withdraw and affirm the circuit court's orders.

¶ 3                                    BACKGROUND

¶ 4      Two days after K.M.'s birth, the Department of Children and Family Services (DCFS) took him into protective custody and the State filed a petition for adjudication of wardship. DCFS had learned that his mother, Asia M., was smoking while pregnant, had not attended necessary doctors' appointments for her high-risk pregnancy, did not have a stable home, and had not received treatment for numerous mental health issues.

¶ 5      At a shelter care hearing on February 9, 2021, the circuit court placed K.M. temporarily in DCFS's custody. The court noted that respondent was in jail. Asia M. had several significant mental health diagnoses, had received inpatient treatment for nine months, was herself a 15-year-old ward of the court, had smoked marijuana during her pregnancy, had had 12 custodial placements during the pregnancy, and had no stable residence for herself and K.M.

¶ 6      At a subsequent hearing, respondent waived a hearing while Asia M. stipulated to the petition's allegations. The court found a sufficient factual basis for the stipulation. Accordingly, the court found K.M. to be neglected because of an injurious environment.

¶ 7      At a dispositional hearing on June 15, 2021, the court found both parents to be unfit and unable to parent, adjudged K.M. to be neglected, made him a ward of the court, and vested custody and guardianship of him in DCFS. Between October 2021 and September 2023, the court reviewed the case seven times.

¶ 8      The State moved to find both parents unfit and to terminate their parental rights, alleging that they had failed to make reasonable efforts to correct the conditions that led to K.M.'s removal

2

during the nine-month period from December 15, 2022, through September 15, 2023 (count 1); failed to make reasonable progress toward his return during the same period (count 2); and failed to maintain a reasonable degree of interest, concern, or responsibility for his welfare (count 3).

¶ 9 At the adjudicatory hearing, the family's caseworker, Ana Gragg, testified that when she took over the case, respondent had already been referred for a substance abuse assessment, a mental health assessment, a sex offender risk assessment, anger management classes, and parenting classes.

¶ 10 Respondent, however, was unwilling to cooperate with services. He refused to sign consents so that Gragg could confirm that he had completed them. He had been incarcerated for much of this time, having been released on June 22, 2022.

¶ 11 Respondent was offered four hours of visitation, once a week. However, during the nine-month period covered by the State's motion, he visited K.M. only once, on January 20, 2023. Gragg understood that, prior to her involvement in the case, his exercise of visitation had been inconsistent. His reasons for missing visits included K.M.'s asthma, his own "being put out of his home," simply not showing up, and not confirming visits on the preceding afternoons as required. As far as Gragg knew, respondent did not send K.M. any gifts, cards, or letters.

¶ 12 Respondent testified that he has four other children, aged six, three, three, and two. He was in jail for about four months in 2023, having been released on November 16. He believed he was a fit person to parent his children, saying, "I'm a very good parent to my other children. This was just, like, an inconvenience [*sic*], but I am a very good dad to my other children."

¶ 13 Asked if he had parented K.M. in any meaningful way, he responded:

"As far as visits which I feel was, like—was not really too much, it was an hour a week, I don't I—I mean, I understand that we're trying to give me time, but I don't feel that was enough time."

¶ 14 He continued to believe that he had completed the required services in conjunction with his parole. He believed he had given Gragg his parole officer's name to verify this, but he had no written documentation because "it was an evaluation" and he did not have the written discharge summary in his possession.

¶ 15 He provided for the needs of his other children, two of whom lived with him. He acknowledged, however, that he had never lived with any of his children without someone else in the home. The court found that the State had proved all three counts of the petition with regard to respondent.

¶ 16 At the best-interests hearing, which respondent did not personally attend, the court took judicial notice of a report stating that K.M. had been placed with a foster parent since he was two days old. The report described K.M. as "a very energetic and rough boy that is full of laughter." He was "very advanced," knew how to count, knew his ABCs, and was nearly potty-trained. He was very attached to his foster mother, whom he called "mommy" and to whom he looked for comfort. Likewise, he was bonded to her other children and to her granddaughter. The foster mother provided for all of his needs. She also noted his tendency toward anger and aggressiveness and was addressing those tendencies effectively. Respondent had been offered 40 visits during the 9-month period but attended only 1 of them. The report recommended the termination of respondent's parental rights and a change of the permanency goal to adoption.

¶ 17 After considering the report, the court found that it was in K.M.'s best interest to terminate respondent's parental rights. Respondent timely appeals.

¶ 19    Respondent's appointed appellate counsel concludes that the only issues he could conceivable raise are (1) whether the court's finding that respondent was an unfit parent was against the manifest weight of the evidence and (2) whether the court erred in terminating respondent's parental rights. Counsel concludes that neither issue has even arguable merit and we agree.

¶ 20    On appeal from findings that a parent is unfit and that terminating her parental rights is in the child's best interests, we must not retry the case but, instead, review the circuit court's findings to decide if they are against the manifest weight of the evidence. *In re Za. G.*, 2023 IL App (5th) 220793, ¶ 31. A finding of unfitness is given great deference because the court had the best opportunity to view and evaluate the parties and their testimony. *Id.*

¶ 21    Here, evidence showed that respondent resisted complying with services. He insisted he had completed many of the same tasks in conjunction with his parole but was unable to document it. Of a possible 40 visits with K.M., he exercised only 1. So far as Gragg knew, he sent no cards, letters, or gifts and did not claim to have provided any financial support to K.M. He essentially conceded that he had never parented K.M. in any meaningful way. Other than a generalized desire to spend more time with K.M., he offered little to establish that he was willing or able to be an effective parent. "[A] parent is not fit merely because the parent has demonstrated '*some* interest in or affection for [his or] her children; [his or] her interest, concern, and *responsibility* must be reasonable.' " (Emphases in original.) *In re P.J.H.*, 2019 IL App (5th) 190089, ¶ 13 (quoting *In re E.O.*, 311 Ill. App. 3d 720, 727 (2000)). The evidence amply supported the court's finding that respondent failed to demonstrate a reasonable degree of interest, concern, and responsibility for K.M.'s welfare.

¶ 22    Counsel further concludes that the court did not err in finding that K.M.'s best interests required terminating respondent's parental rights. Once a parent has been determined to be unfit, "the parent's rights must yield to the child's best interest." (Internal quotation marks omitted.) *In re Za. G.*, 2023 IL App (5th) 220793, ¶ 52. After a finding that a parent is unfit, the State must prove by a preponderance of the evidence that termination of the parent's rights is in the child's best interest. *Id.* ¶ 53 (citing 705 ILCS 405/2-29(2) (West 2020)). On appeal of a best-interest determination, we must decide whether the court's decision is contrary to the manifest weight of the evidence. *Id.* " '[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life.' " *Id.* ¶ 54 (quoting *In re D.T.*, 212 Ill. 2d 347, 364 (2004)).

¶ 23    Here, the report showed that K.M. has lived his entire life in the care of his foster family, with whom he has bonded and who provide him with love, stability, and security. His foster mother is willing to provide permanency to him, via adoption. As noted, respondent had been only minimally involved in his life to that point. Accordingly, the court did not err in finding that terminating respondent's parental rights was in K.M.'s best interest.

¶ 24                              CONCLUSION

¶ 25    As this appeal presents no issue of arguable merit, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 26    Motion granted; judgment affirmed.